Keith Beauchamp (012434)
Shelley Tolman (030945)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, AZ 85004
(602) 381-5490
kbeauchamp@cblawyers.com
stolman@cblawyers.com

Paul G. Karlsgodt (*pro hac vice*)
**BAKER & HOSTETLER LLP**
1801 California St., Suite 4400
Denver, CO 80202
(303) 861-0600
pkarlsgodt@bakerlaw.com

David A. Carney (*pro hac vice*)
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH  44114-1214
(216) 621-0200
dcarney@bakerlaw.com

Marcus McCutcheon (*pro hac vice*)
**BAKER & HOSTETLER LLP**
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626
(714) 966-8811
mmcutcheon@bakerlaw.com

*Attorneys for Defendant Assured Imaging, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Angela T. Travis; Kerri G. Peters; and Geraldine Pineda, individual and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Assured Imaging, LLC, an Arizona limited liability company,<br><br>        Defendant. | No. CV-20-390-TUC-SHR<br><br>**ASSURED IMAGING, LLC'S MOTION TO DISMISS** |

{00527045.1 }

# TABLE OF CONTENTS

Introduction ............................................................................................................1

Law and Argument ................................................................................................2

I.    Plaintiffs Have Not Adequately Alleged Injury in Fact and Therefore Do Not Have Standing to Sue. ..................................................................2

    A.    Injury in Fact Is the First and Foremost of Standing's Three Elements. ..................................................................................2

    B.    Plaintiffs' Claims Are Based Predominantly on Injuries Related to an Alleged Increased Risk of Future Identity Fraud. .............................3

    C.    Plaintiffs Have Not Adequately Alleged Standing Based on an Alleged Increased Risk of Future Identity Fraud. ........................................4

    D.    Plaintiffs' Alleged Mitigation and Emotional Distress Injuries Are Also Insufficient for Standing Under Article III. ................................6

II.    Plaintiffs' Complaint Also Fails to State a Claim on the Merits Under Rule 12(b)(6). ....................................................................................8

    A.    Standard of Review. ..................................................................8

    B.    There Are No Material Distinctions Between the Different State Common Laws for the Issues Raised by This Motion. .............................8

    C.    Plaintiffs' Negligence and Negligence Per Se Claims Should be Dismissed for Failure to Allege Actual Damages. ........................................9

    D.    Plaintiffs' Implied Contract Claim Should Be Dismissed for Failure to Allege Mutual Assent and Under the Pre-Existing Duty Rule. ........................................................................................11

    E.    Courts Have Uniformly Rejected Plaintiffs' Alleged Guardian of Personal Information Fiduciary Duty Theory. ........................................13

    F.    Plaintiffs' Washington and Mexico Consumer Protections Claims Should be Dismissed Under Rule 9(b). ....................................................14

    G.    Plaintiffs' Unjust Enrichment Claim Is Not A Cure-All for Their Failure to Otherwise State a Claim on the Merits. ....................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ables v. Brooks Bros. Grp., Inc.*,
2018 WL 8806667 (C.D. Cal. Jun. 7, 2018).................................................................5

*Adkins v. Facebook, Inc.*,
424 F. Supp. 3d 686 (N.D. Cal. 2019).......................................................................10

*Alcantar v. Sanchez*,
257 P.3d 966 (N.M. 2011).........................................................................................12

*Anderson v. Hannaford Bros.*,
659 F.3d 151 (1st Cir. 2011)......................................................................................13

*Anderson v. Soap Lake Sch. Dist.*,
423 P.3d 197 (Wash. 2018)........................................................................................13

*Antman v. Uber Tech., Inc.*,
2018 WL 2151231 (N.D. Cal. May 10, 2018)............................................................6

*Arizona Att'ys for Criminal Justice v. Ducey*,
465 F. Supp. 3d 978 (D. Ariz. 2020).........................................................................2

*Azar v. Prudential Ins. Co. of Am.*,
68 P.3d 909 (N.M. 2003)...........................................................................................14

*In re Banner Health Data Breach Litig.*,
2017 WL 6763548 (D. Ariz. Dec. 20, 2017).............................................................12

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017).....................................................................................7

*Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*,
2020 WL 4016246 (M.D. Ala. Jul. 16, 2020)............................................................7

*Carlsen v. Gamestop, Inc.*,
833 F.3d 903 (8th Cir. 2016).....................................................................................16

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...............................................................................................4, 7

*Cooney v. Chicago Pub. Sch.*,
407 Ill. App. 3d 358 (1st Dist. 2010).........................................................................13

*Cooney v. Chicago Pub. Sch.*,
  943 N.E.2d 23 (Ill. Ct. App. 2010) ...................................................................... 11, 15

*Crusifilli v. Ameritas Life Ins. Corp.*,
  2015 WL 1969176 (D.N.J. Apr. 30, 2015) .......................................................... 7

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .............................................................................................. 2

*Davis v. Bank of Am. Corp.*,
  2012 WL 3637903 (D. Ariz. Aug. 23, 2012) ...................................................... 14

*Dearing v. Magellan Health Inc.*,
  Case No. 2:20-cv-00747, Order, Dkt. 31 ........................................................... 5

*Del Guzzi Constr. Co., Inc. v. Global Northwest, Ltd., Inc.*,
  719 P.2d 120 (Wash. 1986) ................................................................................. 9

*Doe v. Henry Ford Health Sys.*,
  865 N.W.2d 915 (Mich. App. 2014) .................................................................... 11

*Dolmage v. Combined Ins. Co. of Am.*,
  2015 WL 292947 (N.D. Ill. Jan. 21, 2015) ......................................................... 13

*Frezza v. Google Inc.*,
  2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) .................................................... 12

*Glaze v. Larsen*,
  83 P.3d 26 (Ariz. 2004) ........................................................................................ 9

*Gordon v. Chipotle Mexican Grill, Inc.*,
  344 F. Supp. 3d 1231 (D. Colo. 2018) ................................................................ 16

*Hallmark Indus., Inc. v. Truseal Techs., Inc.*,
  2015 WL 13626029 (D. Ariz. Sept. 30, 2015) .................................................... 9

*In re Hannaford Bros. Co. Customer Data Breach Sec. Litig.*,
  4 A.3d 492 (Me. 2010) .................................................................................. 10, 11, 15

*Holly v. Alta Newport Hosp., Inc.*,
  2020 WL 6161457 (S.D. Cal. 2020) .................................................................... 10

*Impact Fin. Servs., LLC v. Six400 Check Sols., LLC*,
  2010 WL 5056212 (D. Ariz. Dec. 6, 2010) ......................................................... 8

*Irwin v. Jimmy John's Franchise, LLC*,
  175 F. Supp. 3d 1064 (N.D. Ill. 2016) ................................................................ 16

*Jackson v. Loews Hotels, Inc.,*
  2019 WL 6721637 (C.D. Cal. Jul. 24, 2019) ............................................................ 5

*Jaynes v. Strong-Thorne Mortuary, Inc.,*
  945 P.2d 45 (N.M. 1997) ...................................................................................... 13

*Jiminez v. Progressive Casualty Ins. Co.,*
  2016 WL 5858738 (D. Ariz. Oct. 3, 2016) ............................................................... 3

*K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n,*
  677 P.2d 1317 (Ariz. Ct. App. 1983) ...................................................................... 11

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009) ................................................................................ 15

*Key v. DSW, Inc.,*
  454 F. Supp. 2d 684 (S.D. Ohio 2006) ...................................................................... 3

*Krottner v. Starbucks Corp.,*
  2009 WL 7382290 (W.D. Wash. Aug. 14, 2009), *aff'd*
  406 F. App'x 129 (9th Cir. 2010) ............................................................................ 10

*Krottner v. Starbucks Corp.,*
  406 F. App'x 129 (9th Cir. 2010) .................................................................. 8, 11, 12

*Krottner v. Starbucks Corp.,*
  628 F.3d 1139 (9th Cir. 2010) ...................................................................... 5, 6, 12

*Lovell v. P.F. Chang's China Bistro, Inc.,*
  2015 WL 4940371 (W.D. Wash. Mar. 27, 2015) ...................................................... 14

*Lujan v. New Mexico Dep't of Transp.,*
  341 P.3d 1 (N.M. 2014) ........................................................................................... 9

*P.E. Sys., LLC v. CPI Corp.,*
  289 P.3d 638 (Wash. 2012) .................................................................................... 12

*Paul v. Providence Health System-Oregon,*
  273 P.3d 106 (Or. 2012) .................................................................................. 10, 15

*Perdue v. Hy-Vee, Inc.,*
  455 F. Supp. 3d 749 (C.D. Ill. 2020) ...................................................................... 16

*Pisciotta v. Old Nat'l Bancorp,*
  499 F.3d 629 (7th Cir. 2007) ........................................................................... 8, 11

*In re Premera Blue Cross Cust. Data Sec. Breach Litig.*,
   198 F. Supp. 3d 1183 (D. Or. 2016) ................................................................ 14

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011) .............................................................................. 7

*Schall v. AT & T Wireless Servs., Inc.*,
   259 P.3d 129 (Wash. 2011) ............................................................................ 15

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
   427 F. Supp. 2d 526 (M.D. Pa. 2006) ............................................................ 13

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................... 2

*Stollenwerk v. Tri-West Health Care All.*,
   254 F. App'x 664 (9th Cir. 2007) ................................................................... 10

*In re SuperValu, Inc.*,
   870 F.3d 763 (8th Cir. 2017) ......................................................................... 7

*In re SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) ......................................................................... 16

*Taylor v. Boston Scientific Corp.*,
   2020 WL 4592923 (D. Ariz. Aug. 5, 2020) .................................................. 8

*Trichell v. Midland Credit Mgmt., Inc.*,
   964 F.3d 990 (11th Cir. 2020) ....................................................................... 3

*In re Uber Tech., Inc. Data Sec. Breach Litig.*,
   2019 WL 6522843 (C.D. Cal. Aug. 19, 2019) ............................................. 5

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ....................................................................... 14

*In re Vtech Data Breach Litig.*,
   2017 WL 2880102 (N.D. Ill. Jul. 5, 2017) ................................................... 7

*Weinberg v. Advanced Data Processing, Inc.*,
   147 F. Supp. 3d 1359 (S.D. Fla. 2015) .......................................................... 13

*Willingham v. Global Payments, Inc.*,
   2013 WL 440702 (N.D. Ga. Feb. 5, 2013) ................................................... 12

*Young v. Toyota Motor Sales, U.S.A.*,
   472 P.3d 990 (Wash. 2020) ............................................................................ 15

*In re Zappos, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) ................................................................. 5, 6

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(1) ...................................................... 1

Federal Rules of Civil Procedure 12(b)(6) ...................................................... 1

PROSSER & KEETON ON TORTS 165 (5th ed. 1984) ......................................... 9

1 WILLISTON ON CONTRACTS § 3:5 (4th ed.) ............................................... 12

1    Defendant Assured Imaging, LLC, by and through undersigned counsel and
2    pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby
3    moves the Court for an order dismissing the plaintiff's complaint for lack of standing to
4    sue and for failure to state a claim on the merits. Counsel for Assured conferred with
5    plaintiffs' counsel regarding this motion, and the parties agreed that the motion should be
6    filed so the Court can address the issues raised herein.

7                                    **INTRODUCTION**

8    This case arises from a ransomware attack. On May 19, 2020, defendant Assured
9    Imaging's electronic medical record system was encrypted by an actor seeking payment.
10   The system was quickly restored. Assured's subsequent forensics investigation found that
11   the criminal actor had exfiltrated a limited amount of data from Assured's systems prior
12   to deploying the ransomware. The investigation further determined that this information
13   could have included patient information. Assured thus notified each individual whose
14   information could have potentially been exfiltrated in connection with the ransomware
15   incident, even though the scope of the exfiltrated data remains unknown. The information
16   potentially at issue included names, dates of birth, addresses, and treatment information,
17   but did not include social security numbers or financial account information.

18   Three plaintiffs filed their complaint over the ransomware attack on September 11,
19   2020. Assured moved to dismiss this complaint on October 30, 2020. Rather than respond
20   to this motion, plaintiffs filed an amended complaint. Plaintiffs added a new plaintiff to
21   the case, and additional allegations regarding their alleged injuries. None of these
22   changes, however, have fixed the fundamental problems with their claims. Most
23   prominently, plaintiffs still have not alleged a concrete, particularized injury in fact under
24   Article III sufficient to support their standing to sue. And, even assuming standing,
25   plaintiffs' amended complaint still fails to state a claim on the merits. As with standing,
26   the predominant problem with plaintiffs' claims under Rule 12(b)(6) is that they are based
27   on a potential fear of future harm, that is not cognizable as a damage under the relevant
28   state laws. Accordingly, plaintiffs' amended complaint should be dismissed.

## LAW AND ARGUMENT

### I.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED INJURY IN FACT AND THEREFORE DO NOT HAVE STANDING TO SUE.

#### A.   Injury in Fact Is the First and Foremost of Standing's Three Elements.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341-42 (2006) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). For this reason, "[t]he plaintiff bears the burden of establishing the existence of a justiciable case or controversy, and must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Arizona Att'ys for Criminal Justice v. Ducey*, 465 F. Supp. 3d 978, 984 (D. Ariz. 2020) (quotations omitted).

To have standing under Article III "[a] plaintiff must allege [1] personal injury [2] fairly traceable to the defendant's allegedly unlawful conduct and [3] likely to be redressed by the requested relief." *DaimlerChrysler*, 547 U.S. at 342 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Injury in fact is the "[f]irst and foremost" of standing's three elements.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly allege facts demonstrating' each element" of their standing to sue.  *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also Arizona Attorneys*, 465 F. Supp. 3d at 984 (same).

"That a suit may be a class action adds nothing to the question of standing." *Spokeo,* 136 S. Ct. at 1547 n.6. This is so because "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.*; *see*

*also, e.g., Jiminez v. Progressive Casualty Ins. Co.*, 2016 WL 5858738, at *3 (D. Ariz. Oct. 3, 2016) ("A potential class representative must demonstrate individual standing vis-à-vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action.") (quotation omitted).

**B.      Plaintiffs' Claims Are Based Predominantly on Injuries Related to an Alleged Increased Risk of Future Identity Fraud.**

As with their initial complaint, plaintiffs' amended complaint is replete with allegations about potential injuries that they or any other putative class member might have suffered. Plaintiffs allege, for example, that putative class members might have had to "forego medical care and treatment or had to seek alternative care and treatment." (Am. Compl. ¶ 14.) And plaintiffs claim that putative class members "may also incur out of pocket costs, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft." (*Id.*, ¶ 18.)

Plaintiffs themselves, however, make no allegations on these points. And, as set forth above, any allegations about any potential injuries that absent putative class members might have suffered are not relevant to the standing analysis. *See also Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 687 (S.D. Ohio 2006) (denying standing following alleged data breach and agreeing that, "the distinct injuries that Plaintiff has suffered must be the basis to assess whether or not she has standing, and not the injuries suffered by other, unidentified members of the class"); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1001 (11th Cir. 2020) (Katsas, J., sitting by designation) (denying standing where plaintiffs had made "no plausible allegation that *they* were ever at substantial risk of being misled"; "what matters is whether the plaintiff has suffered a concrete injury, not whether other parties have").

Two of the four named plaintiffs do claim specific injuries allegedly resulting from the ransomware attack. First, plaintiff Angela Travis alleges that she "has seen a dramatic increase in targeted spam phone calls after the ransomware attack." (Am. Compl. ¶ 54.) Plaintiff Travis alleges that she has now "been forced to seek medical help from a mental

1   health counsel," including from the "increased stress and anxiety from the spam phone

2   calls." (*Id.*, ¶ 55.) Travis further claims she has "spent hours and hours checking her credit

3   monitoring services." (*Id.*, ¶ 57.)

4          Second, new plaintiff Rebecca Dawn Kelly-Harnett alleges that she too "has seen

5   a dramatic increase in target spam phone calls after the ransomware attack." (*Id.*, 73.)

6   Kelly-Hartnett also alleges that she has suffered "severe emotional distress, anxiety and

7   stress disorder" as a result of the ransomware incident, and "has been forced to increase

8   her medications just to deal with the anxiety and stress caused by the concerns that he has

9   about her privacy." (*Id.*, ¶ 75.) Finally, Kelly-Hartnett also claims that she has "had to

10  spend time protecting against the exfiltration of her Privacy Information, including time

11  placing a fraud alert on her credit reports." (*Id.*, ¶ 76.)

12         Apart from that, all four plaintiffs claim that, because they received notification

13  regarding the ransomware attack, they each have been exposed to a "heightened and

14  imminent risk of fraud and identity theft." (*Id.*, ¶ 17.) To buttress this claim, plaintiffs

15  speculate that the criminals who infiltrated Assured systems' *might* use their information

16  at some time in the future to open "new financial accounts in class members' names," or

17  to "obtain government benefits." (*Id.*, ¶ 15.) Yet, not one of the named plaintiffs alleges

18  that either they themselves or any other putative class member has actually been a victim

19  of any alleged identity fraud yet, whether as a result of the ransomware attack at Assured

20  or otherwise. Instead, plaintiffs' amended complaint is grounded in the fear that such

21  identity theft might occur in the future. (*Id.*, ¶¶ 119-122.)

22         **C.     Plaintiffs Have Not Adequately Alleged Standing Based on an Alleged
23                 Increased Risk of Future Identity Fraud.**

24         None of these claimed injuries are sufficient to establish standing to sue for any of

25  the named plaintiffs. To begin, plaintiffs have not adequately alleged standing based on a

26  claimed increased risk of future identity fraud resulting from the cyberattack. *See Clapper*

27  *v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (allowing for future injury standing under

28  federal law only where plaintiffs allege either a "certainly impending" or "substantial

risk" of future harm). The Court does not write on a clean slate in addressing this question. The Ninth Circuit has twice analyzed standing based on an alleged increased risk of future identity fraud. *See In re Zappos, Inc.*, 888 F.3d 1020, 1027-28 (9th Cir. 2018); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). In both cases, the court allowed for standing, but only because of the type of information that was allegedly stolen during the data security incidents at issue. *See In re Zappos, Inc.*, 888 F.3d at 1023 (hackers intentionally targeted Zappos's servers and stole "names, account numbers, passwords, email addresses, billing and shipping addresses, telephone numbers, and credit and debit card information," including "their full credit card numbers"); *Krottner*, 628 F.3d at 1141 (laptop stolen containing Starbucks employee information, including names, addresses, and social security numbers; one of the three named plaintiffs alleged his bank had already notified him that "someone had attempted to open a new account in his name using his social security number").

District courts interpreting *Zappos* and *Krottner* have thus required plaintiffs to make specific allegations regarding how the data security incident at issue actually places them at an alleged increased risk of identity fraud, based both on the nature of the incident and on the type of information at issue. *See, e.g., Dearing v. Magellan Health Inc.*, Case No. 2:20-cv-00747, Order, Dkt. 31, at pgs. 4-5 (D. Ariz. Sept. 29, 2020) (attached as Exhibit A) (denying standing based on an alleged increased risk of identity fraud where "Plaintiff fails to show her injury is 'certainly impending' or that there is a 'substantial risk that harm will occur.' Instead, her alleged risk is entirely speculative."); *In re Uber Tech., Inc. Data Sec. Breach Litig.*, 2019 WL 6522843, at *4 (C.D. Cal. Aug. 19, 2019) (same where "Plaintiff fails to explain *how* gaining access to one's basic contact information and driver's license number creates a credible threat of fraud or identity theft"); *Jackson v. Loews Hotels, Inc.*, 2019 WL 6721637, at *3 (C.D. Cal. Jul. 24, 2019) (distinguishing *In re Zappos* and *Krottner*; "those cases involved the theft of certain types of sensitive information not at issue here: social security numbers, account numbers, and account passwords"); *Ables v. Brooks Bros. Grp., Inc.*, 2018 WL 8806667, at *5 (C.D.

Cal. Jun. 7, 2018) (same where, "as described above, cancellation of the compromised credit and debit card accounts extinguished any concrete risk of future identity theft, and the FAC fails to explain how the wrongdoers' possession of Ables' first and last name exposes him to such a substantial risk"); *Antman v. Uber Tech., Inc.*, 2018 WL 2151231, at *11 (N.D. Cal. May 10, 2018) (same where "[t]he name, driver's license, and (for Mr. Antman) his bank account and routing information do not plausibly risk fraud or identity theft for the reasons in the court's earlier orders").

As set forth above, the information that was potentially exfiltrated in connection with the Assured ransomware attack did not include the type of information at issue in *Zappos* or *Krottner*—detailed financial information, including credit and debit card numbers, and social security numbers. (*Compare* Am. Compl. ¶ 43 ("**What Information Was Involved**.") (information included names, addresses, dates of birth, and treatment information).) Plaintiffs' amended complaint further makes plain that, even with respect to this non-financial information, "[t]he investigation was unable to determine the full extent of information that was accessed by the unknown actor," and thus also that this information was only "potentially accessed" in connection with the ransomware incident. (*Id.*) Indeed, plaintiff Travis and Kelly-Hartnett's allegations regarding the spam calls they received, even assuming *arguendo* they could have been related to the Assured ransomware attack, show that the apparent purpose of the calls was to attempt to gather *more* information, from which the alleged caller could use to try to commit actual identity fraud. (Am. Compl. ¶¶ 54, 74 (alleging calls were designed to "extract more personal information utilizing the data exfiltrated and acquired in this ransomware attack").)

    **D.**    **Plaintiffs' Alleged Mitigation and Emotional Distress Injuries Are Also Insufficient for Standing Under Article III.**

For all of the above-stated reasons, plaintiffs have not adequately alleged standing to sue based on a claimed risk of identity fraud under the facts of this case. And plaintiffs' failure to adequately allege standing based on an increased risk of future identity fraud also dooms their standing to sue based on their any of their other alleged injuries in fact.

The Supreme Court made this fact clear in *Clapper*, holding that a federal plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *See* 568 U.S. at 411. And courts applying *Clapper* have thus also uniformly held that standing based on alleged mitigation time and effort necessarily must rise and fall with standing based on an alleged increased risk of identity fraud. *See, e.g., Beck v. McDonald*, 848 F.3d 262, 276-77 (4th Cir. 2017); *In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (all holding same).

This same analysis also applies to plaintiffs Travis's and Kelly-Hartnett's standing to sue based on their alleged emotional distress. Here again, courts have rejected standing based on claimed emotional distress following a data security incident, at least where the plaintiffs cannot independently establish standing to sue based on an alleged increased risk of identity fraud. *See, e.g., In re Vtech Data Breach Litig.*, 2017 WL 2880102, at *5 n.6 (N.D. Ill. Jul. 5, 2017) (holding that "[w]here only an unspecified risk of future financial harm is alleged, emotional distress in the wake of a data security breach is insufficient to establish standing"); *Crusifilli v. Ameritas Life Ins. Corp.*, 2015 WL 1969176, at *4 (D.N.J. Apr. 30, 2015) (same, noting "[c]ourts across the country have rejected 'emotional distress' as a basis for standing under similar circumstances"); *Reilly*, 664 F.3d at 643-44 (denying standing based on alleged emotional distress).

As one court recently held in denying standing following an alleged ransomware incident: "Plaintiffs simply have failed to plausibly point to a *certain* threat of the hackers' making of their specific data as a result of the Breach." *Blahous v. Sarrell Reg'l Dental Ctr. for Pub. Health, Inc.*, 2020 WL 4016246, at *7 (M.D. Ala. Jul. 16, 2020) (emphasis in original). "Instead, their pleading speaks of possibilities and traffics in maybes." *Id.* at *6. This same holding also applies here. Plaintiffs' amended complaint should be dismissed in its entirety for failure to allege a personal, particularized, and concrete injury in fact under Article III.

## II.      PLAINTIFFS' COMPLAINT ALSO FAILS TO STATE A CLAIM ON THE MERITS UNDER RULE 12(B)(6).

Even assuming the allegations meet the lower threshold for federal standing to sue, plaintiffs' amended complaint fails to state a claim on the merits under Rule 12(b)(6). *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) (even after allowing for standing affirming dismissal of complaint under Rule 12(b)(6)); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) (same). For the reasons explained below, each of plaintiffs' seven alleged state law claims fails to state a claim under any potentially relevant state law.

### A.      Standard of Review.

"Pursuant to Federal Rule of Civil Procedure 12(b)(6), a cause of action may be dismissed because of the plaintiff's 'failure to state a claim upon which relief can be granted.'" *Taylor v. Boston Scientific Corp.*, 2020 WL 4592923, at *2 (D. Ariz. Aug. 5, 2020) (quoting Fed. R. Civ. P. 12(b)(6)). "A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory." *Id.* "To avoid dismissal under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to a state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.      There Are No Material Distinctions Between the Different State Common Laws for the Issues Raised by This Motion.

Plaintiffs' claims in this case might ultimately be governed by the laws of three states. Plaintiffs Angela Travis and Rebecca Dawn Kelly-Hartnett are from Washington (Am. Compl. ¶¶ 1, 4), plaintiffs Kerri Peters and Geraldine Pineda are from New Mexico (*id.*, ¶¶ 2-3), and defendant Assured Imaging is headquartered in Arizona (*id.*, ¶ 5). As shown below, however, regardless of which of these state laws ultimately governs, Assured's motion to dismiss here should be granted. Each of the relevant state laws embraces the same basic legal principles that form the basis for Assured's arguments and individually mandate dismissal of each of plaintiffs' common law claims. *See Impact Fin.*

1   *Servs., LLC v. Six400 Check Sols., LLC*, 2010 WL 5056212, at *1 (D. Ariz. Dec. 6, 2010)

2   (granting motion to dismiss fraud claim; "we need not decide which law applies to the

3   fraud claim because our inquiry into the laws of Arizona and Tennessee instructs us that

4   plaintiff's claim must be dismissed under either state's laws"); *Hallmark Indus., Inc. v.*

5   *Truseal Techs., Inc.*, 2015 WL 13626029, at *5 n.9 (D. Ariz. Sept. 30, 2015) (noting

6   "[t]he Court need not resolve the choice of law issue," because "there is no apparent

7   difference in the relevant laws of Arizona and Ohio as applied in this case").

### C.   Plaintiffs' Negligence and Negligence Per Se Claims Should Be Dismissed for Failure to Allege Actual Damages.

10   As the Arizona Supreme Court has held: "Negligence alone is not actionable;

11   actual injury or damages must be sustained before a cause of action in negligence is

12   generated." *Glaze v. Larsen*, 83 P.3d 26, 29 (Ariz. 2004) (quotation omitted); *Del Guzzi*

13   *Constr. Co., Inc. v. Global Northwest, Ltd., Inc.*, 719 P.2d 120, 124 (Wash. 1986) ("Actual

14   loss or damage is an essential element in establishing the traditional elements for a cause

15   of action in negligence."); *Lujan v. New Mexico Dep't of Transp.*, 341 P.3d 1, 4 (N.M.

16   2014) (negligence claim requires "that the breach was a cause in fact and proximate cause

17   of the plaintiff's damages"; "The absence of any of these elements is fatal to a plaintiff's

18   claim."); *see also* Prosser & Keeton on Torts 165 (5th ed. 1984) ("Since the action of

19   negligence developed chiefly out of the old form of action on the case, it retained the rule

20   of that action, that proof of damage was an essential part of the plaintiff's case.").

21   This basic principle requires dismissal of plaintiffs' alleged negligence claims

22   here. As set forth above, plaintiffs' complaint is predominantly grounded in the fear of a

23   potential future harm—identity fraud—that they have not yet suffered, and that may or

24   may not ever occur in the future. (*See, e.g.,* Am. Compl. ¶ 133 (alleging that "[a]s a direct

25   and proximate result of Defendant's conduct, Plaintiffs have been placed at an imminent,

26   immediate, and continuing increased risk of harm from fraud and identity theft"; *id.*, ¶ 134

27   (further alleging that "Plaintiffs and Class Members" now also "face substantial risk of

28   out-of-pocket fraud losses such as loans opened in their names, medical services billed in

1    their names, tax return fraud, utility bills opened in their names, credit card fraud, and

2    similar identity theft"); *id.*, ¶¶ 15-17 (all same).)

3         These alleged damages relating to a claimed increased of future identity fraud are

4    not cognizable as a matter of law, as the Ninth Circuit has already held in particular in

5    analyzing these claims under both Washington and Arizona law. *See Stollenwerk v. Tri-*

6    *West Health Care All.*, 254 F. App'x 664, 666 (9th Cir. 2007) (rejecting claim for

7    increased risk of identity fraud damages under Arizona law; "Plaintiffs have produced

8    evidence of neither significant exposure of their information nor a significantly increased

9    risk that they will be harmed by its misuse."); *Krottner v. Starbucks Corp.*, 2009 WL

10   7382290, at *6-9 (W.D. Wash. Aug. 14, 2009), *aff'd* 406 F. App'x 129, 131 (9th Cir.

11   2010) (dismissing negligence claim for increased risk of identity fraud damages under

12   Washington law; "Washington has no legal tradition of recognizing remedies for harms

13   not yet realized"); *see also, e.g., Holly v. Alta Newport Hosp., Inc.*, 2020 WL 6161457,

14   at *6 (S.D. Cal. 2020) (dismissing claim for increased risk of identity fraud damages

15   under California law: "Holly's bare allegation of increased risk of identity theft in the

16   [complaint] is 'too speculative to satisfy the pleading requirement' to show actual

17   damages."); *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 695 (N.D. Cal. 2019) (same;

18   "While plaintiff Adkins has standing to sue based on his increased risk of future identity

19   theft, in California, this risk alone does not rise to the level of appreciable harm to assert

20   a negligence claim.").

21        Here again, as with standing, this same basic analysis also precludes plaintiffs'

22   claims for damages under state law based on alleged emotional distress or mitigation

23   resulting from the ransomware incident. *See also, e.g., Paul v. Providence Health System-*

24   *Oregon*, 273 P.3d 106, 112, 114-15 (Or. 2012) (rejecting claim for emotional distress

25   under Oregon law; "[N]egligent conduct that results only in a significantly increased risk

26   of future injury that requires monitoring does not give rise to a claim for negligence.");

27   *In re Hannaford Bros. Co. Customer Data Breach Sec. Litig.*, 4 A.3d 492, 496-97 (Me.

28   2010) (rejecting claim for alleged "time and effort" damages under Maine law; "The tort

1   of negligence does not compensate individuals for the typical annoyances or

2   inconveniences that are a part of everyday life."); *see also, e.g., Doe v. Henry Ford Health*

3   *Sys.*, 865 N.W.2d 915, 921-22 (Mich. App. 2014) (rejecting damages claim in its entirety

4   tethered to alleged increased risk of future identity fraud; "damages incurred in

5   anticipation of possible future injury rather in response to present injuries are not

6   cognizable under Michigan law"); *Cooney v. Chicago Pub. Sch.*, 943 N.E.2d 23, 31 (Ill.

7   Ct. App. 2010) (rejecting claim under Illinois law; "[A]s a matter of law, an increased

8   risk of future harm is an *element of damages* that can be recovered for a present injury—

9   it is *not* the injury itself.") (emphasis in original, quotation omitted); *Pisciotta v. Old Nat'l*

10  *Bancorp*, 499 F.3d 629, 639-40 (7th Cir. 2007) (same under Indiana law; "Without more

11  than allegations of increased risk of identity theft, the plaintiffs have not suffered a harm

12  that the law is prepared to remedy.").

13      D.    **Plaintiffs' Implied Contract Claim Should Be Dismissed for Failure to**
14            **Allege Mutual Assent and Under the Pre-Existing Duty Rule.**

15      This same basic damages analysis applies equally to plaintiffs' alleged claim for

16  breach of implied contract, pleaded at Count III of their complaint. (*Id.*, ¶¶ 182-205.)

17  Numerous of the cases cited above also dismissed contract-based claims for this same

18  failure to plead actual damages, holding that the alleged type of increased risk damages

19  plaintiffs claimed were not cognizable under any relevant legal theory. *See Krottner*, 406

20  F. App'x at 132; *Pisciotta*, 499 F.3d at 639-40; *In re Hannaford Bros.*, 4 A.3d at 496-97;

21  *Doe*, 865 N.W.2d at 921-22.

22      In this case, there are also additional pleading problems on plaintiffs' implied

23  contract claim; most notably, plaintiffs' failure to identify what the alleged implied

24  contract with Assured for data security (or otherwise) actually is. *See K-Line Builders,*

25  *Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983) ("For an

26  enforceable contract to exist, there must be an offer, an acceptance, consideration, and

27  sufficient specification of terms so that obligations involved can be ascertained.")

28  (quoting *Savoca Masonry Co., Inc. v. Homes and Son Constr. Co., Inc.*, 542 P.2d 817,

819 (Ariz. 1975)); *P.E. Sys., LLC v. CPI Corp.*, 289 P.3d 638, 643 (Wash. 2012) (contract formation requires "an objective manifestation of mutual assent of both parties"; "the terms assented to must be sufficiently definite"); *Alcantar v. Sanchez*, 257 P.3d 966, 973-74 (N.M. 2011) (same; "there must be an objective manifestation of mutual assent by the parties to the material terms of the contract"); 1 WILLISTON ON CONTRACTS § 3:5 (4th ed.) (same; the parties "must agree to the material terms of their bargain").

Plaintiffs allege that they each "entered into a valid and enforceable implied contract with Defendant when they first went for mammography services and other medical care and treatment." (Am. Compl. ¶ 184.) Yet, no plaintiff alleges that they actually saw, read, or otherwise even knew of the existence of the two actual documents they rely upon to form the basis for even this implied mutual understanding: a Privacy Notice to Patients and a Patient Rights and Responsibilities that are attached as an exhibit to their amended complaint. (*See id.*, ¶¶ 192, 194, 199, Ex. E.) This fact alone was fatal to the plaintiffs' contract claim in *Krottner*, where the court dismissed an implied contract claim because, as here, the named plaintiffs could not allege "they read or even saw the documents" relied on in their complaint, "or that they understood them as an offer." 406 F. App'x at 132; *see also Willingham v. Global Payments, Inc.*, 2013 WL 440702, at *20 (N.D. Ga. Feb. 5, 2013) (plaintiffs' "broad statements of reliance on a defendant's website and privacy statement do not give rise to [implied] contract claims where, as here, Plaintiffs do not allege that they read and relied upon those statements"); *Frezza v. Google Inc.*, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (rejecting implied contract claim where plaintiffs did not "sufficiently plead that Google agreed to and then breached a specific obligation" to comply with data security standards).

Moreover, to the extent plaintiffs are alleging that there was some implied contract for Assured to comply with HIPAA's data security requirements (*see* Am. Compl. ¶¶ 98-103, 104(j)-(r), 195, 205), this claim would run into its own independent problems. In particular, there would be no valid consideration for this alleged promise to comply with HIPAA under the pre-existing duty rule. *See In re Banner Health Data Breach Litig.*,

2017 WL 6763548, at *3-4 (D. Ariz. Dec. 20, 2017) (dismissing analogous contract claim following alleged data breach; "Under Arizona law, the performance or promise to do something that a party is already legally obligated to do is not valid consideration for a contract.") (quotation omitted). For both these reasons, then, plaintiffs' implied contract claim should be dismissed. *See also Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 215-16 (Wash. 2018) ("To bring a claim for breach of contract, a party must point to a separate duty contained in the contract that is different from the duties already imposed by law on the parties."); *Jaynes v. Strong-Thorne Mortuary, Inc.*, 945 P.2d 45, 48 (N.M. 1997) ("It is clear that if a party does only what he is legally obligated to do or less he is not suffering legal detriment because he is not surrendering a legal right.").

**E.    Courts Have Uniformly Rejected Plaintiffs' Alleged Guardian of Personal Information Fiduciary Duty Theory.**

Count four of plaintiffs' amended complaint asserts a claim for breach of fiduciary duty, alleging that by "providing their Private Information to Defendant," plaintiffs placed "special confidence" in Assured, whereby "Defendant became guardians of Plaintiffs' and Class Members' Private Information," and thus also "Defendant became a fiduciary by its undertaking and guardianship of the Private Information." (Compl. ¶¶ 207-09.)

This same boiler-plate theory for the alleged creation of a fiduciary relationship has been uniformly rejected by courts across the nation. *See Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1367 (S.D. Fla. 2015) (holding "the mere receipt of confidential information is insufficient by itself to transform an arm's-length transaction into a fiduciary relationship"); *see also, e.g., Anderson v. Hannaford Bros.*, 659 F.3d 151, 157-58 (1st Cir. 2011); *Cooney v. Chicago Pub. Sch.*, 407 Ill. App. 3d 358, 363 (1st Dist. 2010); *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526, 534-35 (M.D. Pa. 2006); *Dolmage v. Combined Ins. Co. of Am.*, 2015 WL 292947, at *6 (N.D. Ill. Jan. 21, 2015) (all holding same).

There is no reason to believe that Arizona, Washington or New Mexico law would reach any different result; two federal district courts in Washington have already rejected

the theory. *See In re Premera Blue Cross Cust. Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1202-3 (D. Or. 2016); *Lovell v. P.F. Chang's China Bistro, Inc.*, 2015 WL 4940371, at *4 (W.D. Wash. Mar. 27, 2015); *see also, e.g., Davis v. Bank of Am. Corp.*, 2012 WL 3637903, at *6 (D. Ariz. Aug. 23, 2012) (holding that, "[w]ithout more, submitting personal financial information regarding eligibility for a federal loan modification program does not create a fiduciary relationship"); *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 926 (N.M. 2003) (fiduciary duty only exists under New Mexico law where "special confidence has been placed in one party who in equity and good conscience is bound to act in good faith and with due regard to the interests of the other party").

## F.   Plaintiffs' Washington and Mexico Consumer Protections Claims Should Be Dismissed Under Rule 9(b).

The fifth and seventh counts in plaintiffs' amended complaint allege claims under the Washington State Consumer Protection Act (Am. Compl. ¶¶ 227-238) and the New Mexico Unfair Practices Act (*id.*, ¶¶ 250-260). The predominant basis for both of these claims is that Assured allegedly engaged in fraud. In particular, plaintiffs accuse of Assured of "knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes" (*id.*, ¶ 232), and from there engaging in a scheme of "misrepresentations" and "non-disclosures" to conceal this fact (*id.*, ¶ 234; *see also, e.g., id.*, ¶¶ 251, 254-55). As plaintiffs allege for their New Mexico consumer protection claim: "The acts and omissions of Assured were done knowingly and intentionally with the purpose of the sale of goods and services to the Plaintiffs Peters and Pineda and the New Mexico Subclass members." (*Id.*, ¶ 255.)

Given these allegations of knowing and intentional misconduct, it is indisputable that Rule 9(b) applies to these claims. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action."); *see also* N.M. Stat. Ann. § 57-12-2(D) (defining "unfair or deceptive trade practice" as being limited to "false or misleading" statements made in trade or commerce). And here, plaintiffs do not even

1    attempt to plead any facts to meet the "who, what, when, where, and why" particularity

2    requirements under Rule 9(b). Instead, plaintiffs continue to hide behind their conclusory

3    assertions of a purported fraud, generally alleging that Assured misrepresented or omitted

4    "material" facts without specifically identifying one particular piece of information that

5    Assured allegedly misrepresented or failed to disclose. (Compl. ¶ 207.) This is insufficient

6    to state any type of alleged consumer fraud, whether under Rule 9(b) or any other civil

7    rule. *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) (dismissing generally

8    pleaded omission claim because "Rule 9(b) demands that the circumstances constituting

9    the alleged fraud be specific enough to give defendants notice of the *particular*

10   *misconduct* . . . so that they can defend against the charge and not just deny that they have

11   done anything wrong") (emphasis added).

12      Moreover, to the extent plaintiffs are also seeking to assert an independent "unfair

13   acts or practices" claim under the Washington Consumer Protection Act, based on

14   Assured's allegedly deficient data security alone (*see* Compl. ¶ 232), this portion of the

15   claim should be dismissed for the same reasons set forth above with respect to plaintiffs'

16   negligence and contract claims—a failure to allege "actual injury," as required by the

17   Washington statute itself. *See, e.g.*, *Young v. Toyota Motor Sales, U.S.A.*, 472 P.3d 990,

18   997 (Wash. 2020) (Washington Consumer Protection Act plaintiff must show "that any

19   unfair or deceptive act or practice on the part of the defendant caused him injury"); *Schall*

20   *v. AT & T Wireless Servs., Inc.*, 259 P.3d 129, 137 (Wash. 2011) (same); *see also Paul*,

21   273 P.3d at 114-15 (rejecting claim based on alleged increased risk of future identity fraud

22   as being sufficient to meet same requirement under Oregon Unfair Trade Practices Act);

23   *Cooney*, 943 N.E.2d at 31 (same; Illinois Consumer Fraud Act); *In re Hannaford Bros.*,

24   4 A.3d 492, 496-97 (same; Maine Unfair Trade Practices Act).

25      **G.     Plaintiffs' Unjust Enrichment Claim Is Not A Cure-All for Their
26              Failure to Otherwise State a Claim on the Merits.**

27      Finally, count six of plaintiffs' amended complaint alleges a claim for unjust

28   enrichment. (Am. Compl. ¶¶ 239-49.) The basis for this claim is plaintiffs' allegation that

plaintiffs conferred an unspecified "monetary benefit" on Assured, and that they should now be entitled to a return of some portion of this money because of Assured's allegedly inadequate data security. (*Id.*, ¶¶ 242-43.)

Here again, courts have routinely rejected this theory of unjust enrichment—that everyone should get some of their money back merely because a company suffered a data security incident—as being sufficient to state a claim. As one on these courts has held: "Irwin paid for food products. She did pay for a side order of data security and protection; it was merely incidental to her food purchase, as is the ability to sit at a table to eat her food, or to use Jimmy John's restroom." *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1072 (N.D. Ill. 2016).

This common sense logic has routinely been followed by other courts. *Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1249 (D. Colo. 2018) (same; "Plaintiffs paid for burritos; Plaintiffs received burritos."); *Carlsen v. Gamestop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (same where plaintiff "does not allege that any specific portion of his subscriber fee went toward data protection or that GameStop agreed to provide additional protection to paid subscribers that it did not also provide to non-paid subscribers."); *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 766 (C.D. Ill. 2020) (same; "Plaintiffs have not alleged that any specific portion  of their payments went toward data protection; rather, they state that their payments were for food and gas.").

This same analysis applies to and bars plaintiffs' unjust enrichment claim here. Plaintiffs allege that they were either patients of, or received imaging services from, Assured. (Am. Compl. ¶¶ 48, 58, 63, 68.) Plaintiffs concede that they received the imaging services they allegedly paid Assured for, or at least they make no allegations to the contrary. This Court should likewise refuse to slice and dice a payment for an imaging service to include a data security refund simply because a company should happen to suffer a data security incident. *See also, e.g., In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) (dismissing alleged unjust enrichment claim; "Because [plaintiff] does not allege that any specific portion of his payment went toward data protection, he has not

alleged a benefit conferred in exchange for protection of his personal information nor has he shown how [defendant's] retention of his payment would be inequitable.").

Respectfully submitted this 11th day of December, 2020.

**COPPERSMITH BROCKELMAN PLC**

By  s/ Keith Beauchamp
　　Keith Beauchamp
　　Shelley Tolman

**BAKER & HOSTETLER LLP**
　　Paul Karlsgodt
　　David Carney
　　Marcus McCutcheon

*Attorneys for Defendant*